**Warren E. Reynolds, Plaintiff in Error, v. Harriet E. Reynolds et al., Defendants in Error.**

**Gen. No. 5,833.**

1. PARTNERSHIP, § 397*—*when bill for accounting against devisees of copartner demurrable.* A bill filed by complainant against his mother and his children for an accounting and apportionment to him of his partnership interest in certain property and funds devised to defendants by his father, who was complainant's copartner in business, *held* demurrable where it alleged that title to real estate purchased with partnership funds was taken in the name of his father, that the partnership was dissolved, and it appeared that complainant had waited until his father's estate had been administered and his rights had become barred by the statute of limitations before the bill was filed.

2. PARTNERSHIP, § 392*—*time within which bill for accounting may be filed.* A bill for an accounting of partnership assets must be filed within five years after the dissolution of the partnership.

3. LIMITATION OF ACTIONS, § 41*—*application of statute giving creditors of deceased one year to file claims.* The saving of the statute giving creditors of deceased one year after the issuance of letters in which to exhibit their claims applies only to actions against the executor or administrator.

Error to the Circuit Court of Whiteside county; the Hon. FRANK D. RAMSAY, Judge, presiding. Heard in this court at the October term, 1913. Affirmed. Opinion filed May 1, 1914.

*See Illinois Notes Digest, Vols. XI to XV and Cumulative Quarterly, same topic and section number.

HENRY C. WARD and JAMES HAMILTON LEWIS, for plaintiff in error; ROBERT P. BURKHALTER, of counsel.

STAGER & STAGER and McCALMONT & RAMSAY, for defendants in error.

MR. JUSTICE DIBELL delivered the opinion of the court.

Plaintiff in error filed a bill in equity against his mother, Harriet E. Reynolds, and his children, Helena B. Reynolds and Edwin S. Reynolds, to which the mother demurred and the children by guardians *ad litem*, they being minors. The demurrers were confessed and he filed an amended bill, to which the mother demurred and the daughter, having then become of age, demurred, and the son demurred by his guardian *ad litem*. Said demurrers were sustained and the amended bill was dismissed for want of equity. Complainant below sued out this writ of error to review said decree.

The amended bill will hereinafter be referred to for brevity as the bill. The bill alleged that in 1885 complainant lived in Prophetstown, Whiteside county, with his parents, Edwin and Harriet E. Reynolds, and became of age in that year, and wished to engage in some profitable occupation; that his father was then engaged in farming and in raising and buying and selling blooded stock, principally neat cattle; that his father proposed to complainant that if he would stay at home with his parents, the father would take him into partnership in said business and give him a half interest therein, and complainant accepted said offer; that no written articles of partnership were ever entered into, but a verbal agreement was made between them that complainant should take the management of the business off from his father's hands and leave him only the part of adviser and director in the management of the business; and that all the stock of hay, grain and feed should be held in common between the

two, and that the use of the farm, farm buildings, farming utensils, etc., should be considered partnership property, for partnership benefit; that they then entered into the work of said partnership; that no inventory was taken of the effects of the partnership; that the partnership assumed the name of Edwin Reynolds and Son, or E. Reynolds and Son, and by that name made contracts, had bank accounts, printed pedigrees of various animals and had letter heads, bill heads and advertising matter; that the complainant had the entire management of the business of the firm and devoted his entire time to it, and drew out of the partnership funds only small amounts for living expenses, taking nothing as compensation or salary, as it was a part of the agreement that all profits above reasonable living expenses should be left in the business; that complainant drew partnership checks in paying expenses and purchases, and from time to time, as such partnership accounts were balanced in the book, the bank books and returned checks were checked over by said Edwin Reynolds, and he was at all times advised as to the partnership business, and the actual condition of the same; that the firm made a great deal of money, and in 1891 purchased a certain farm of 200 acres described in the bill; that complainant proposed that the title should be vested in said Edwin Reynolds to please his vanity, and the title was so taken; that in 1904 another farm of 413.83 acres was bought with the partnership funds, and the title placed in said Edwin Reynolds; and that complainant desired the title should be so placed, both because the firm was contemplating going out of business in the near future, and complainant desired to go into some other business which would take him away from the neighborhood where these farms were, and he feared that he might make a failure in any venture he might enter upon, and he knew at the time that he was an only child and that the estate not used by his parents in their lifetime would descend to him,

and also because his father had told him that he had executed a will whereby, after the death of both his parents, the entire remaining estate would come to complainant; that in March, 1905, the partnership was dissolved, and notice thereof given in a newspaper, and complainant left home and went into a different business, and drew from the partnership a small part of his interest therein; that on account of the age of his father and mother he never asked for a division of the partnership assets, and no such division was made; that he did not suspect that his father had changed his intention to give him his property in his last will until after his father died, in January, 1910, and said will was presented for probate, and it gave all his personal property and the life use of his real estate to said Harriet E. Reynolds and in fee to the children of complainant subject to said life estate; in which will it was also stated that the testator had advanced to complainant $10,000 and that he, by said will, gave him said money in full of his share in the estate; and said Harriet E. Reynolds and another were made executors; that complainant did not administer upon the partnership estate, as his mother knew all these facts, and he relied upon her sense of justice to inventory the partnership estate, and, acting under legal advice, he waited until the estate of his father was duly settled, and this was done without the partnership interests of complainant having been adjusted. The bill also alleged that there were other lands and village property which complainant was informed and believed were purchased with the joint funds of the partnership; that since its acquisition by purchase from partnership funds, the real estate has greatly increased in value; that complainant refrained from persisting in the distribution of the property of the partnership during the lifetime of the said Edwin Reynolds because he relied upon the high integrity of his father; but that under some influence unknown to the complainant, his father lost sight of complainant's legal rights in

the property and made said will as if all of said property had been the exclusive estate of said Edwin Reynolds. The bill also alleged that his mother, Harriet E. Reynolds, knew of the partnership, knew of the investment of the partnership funds in this real estate and knew of his rights generally. The bill prayed that a full accounting be had between the complainant and the said defendants, and that their respective interests in the subject-matter be determined, and the interest of complainant be apportioned to him, and that defendant Harriet E. Reynolds be required to disclose fully all the chattel property of which Edwin Reynolds died possessed, and all the notes, securities and other credits he possessed or was entitled to possess at the time of his decease, and a full description of all the real estate of which Edwin Reynolds died seized, other than that described in the bill, and that a receiver be appointed.

By the averments of the bill, the partnership was dissolved in March, 1905. On April 1, 1909, Edwin Reynolds made the will set out in the bill. Edwin Reynolds died in January, 1910. His will was admitted to probate and his estate was duly settled, and thereafter this original bill was filed on December 20, 1911, and summons served the next day. The demurrers claimed that the bill showed on its face that the right to an accounting, if one ever existed, was barred by the statute of limitations before said bill was filed, as was also complainant's right to have any of said property apportioned to him, and also his right to a discovery, and also his right to any of the relief prayed for, and that the same were also barred by laches, by equitable estoppel, by estoppel *in pais* and by the statute of frauds.

We are of the opinion that unless some facts are shown in the bill relieving complainant from the operation of the statute of limitations, he was required to file his bill for an accounting within five years after the dissolution of the partnership, or by March, 1910.

If the death of his father operated to suspend his rights in any respect, it was only his right to proceed against the executors, and that suspension was only for one year from the time when he could have taken out letters as the sole heir at law, if the executors did not do so. As the bill declares the estate was "duly settled" before he filed the original bill, and, as the statute gave creditors one year after the issue of letters in which to exhibit their claims, it is obvious that the time of one year saved by statute had expired before this bill was filed. But that saving of the statute is only as to actions against the executor or administrator. The title to this land passed directly to the devisees under the death of the testator, subject to the life estate granted to Harriet E. Reynolds by the will, and as to the land, no reason is perceived why the running of the statute was arrested by the death of the father, unless some sufficient excuse is shown in the bill. The excuses set out in the bill are these: His father had, at some time in his life, told him that he had made a will giving the complainant all the property upon the death of both his parents, and his father afterwards made the will above referred to. There is no averment in the bill when this statement was made by Edwin Reynolds to complainant. It may have been very many years ago. There is no suggestion in the bill that that statement was false when made. The bill does not allege any facts tending to show a contract to devise the estate to complainant. The bill does not intimate that such statement was made to complainant for the purpose of deceiving him, or for the purpose of inducing him to have the title to these lands put in the father (who, the bill alleged, proposed that the title should be placed in the son), or that it was in any way connected with the placing of the title to the lands in the father, except that complainant says that when he proposed to have the title to the land last purchased placed in his father, he remembered and thought of that statement which his

father had at some time prior made to him. The will which was probated was made long after the son dissolved the partnership and left home, and it may very well be that the father had good reasons for changing his mind. As another reason why the statute of limitations should not run, it is alleged that his mother, the executrix, knew all about the partnership and investment of the partnership funds in land. That would be no reason why the statute of limitations should not run in favor of the father while he lived, and he lived, and the statute ran in his lifetime, from March, 1905 until January, 1910. It is not averred that the mother deceived him or did any act prejudicial to his interests, except that she proceeded to administer the estate. A third reason urged why the statute of limitations should not run is because this was between parents and child. We are of opinion that nothing is alleged in the bill concerning that relation which would tend to arrest the statute of limitations. It is further to be noted that the statute gave complainant, as a partner, the right to inventory and administer the partnership effects in the Probate Court, and that complainant did not perform that duty or act upon the privilege which the statute gave him. Moreover, under the present statute, the proceedings for the administration of an estate are *in personam* and not merly *in rem,* and it must be presumed, in the absence of any allegation in this bill, that the complainant was duly notified of the death of his father, of the application for probate of the will and for letters testamentary, and of the application to close the estate, and that he was heard in reference to all these matters if he desired to be heard. Complainant now contends that this is not a bill for an accounting of a partnership, but to enforce a trust, and that the various things above stated should prevent the statute from being applied to obstruct the enforcement of the trust. He argues that his father promised to will this land to him, and that the making of the will, which was pro-

bated, was a fraud upon his rights, and that he did not discover that fraud until the will was probated, and the statute did not begin to run against him until that time. There is no foundation for these positions in the bill itself. Complainant does not state therein that his father ever promised to convey this land to him. He does not aver any facts which constitute a fraud upon his rights. He has waited until the estate was administered and until his mother's right to renounce the will and take her rights as widow has expired, and, after his rights are barred by the statute of limitations, he now seeks this relief. We are of opinion that the court properly sustained the demurrers to the amended bill and dismissed the bill for want of equity.

The decree is affirmed.

*Affirmed.*